**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
                              :

**JEFFREY EVANS,**             :

        **Plaintiff,**     :
                         :    **REPORT AND RECOMMENDATION**
    **-against-**            :    04 Civ. 5568 (SCR)(MDF)
                         :
**OFFICER KOWALSKI, et al.,**  :

        **Defendants.**    :
                         :
------------------------------X

**TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.**

Defendant, Jeffrey Evans, *pro se* and incarcerated, has brought this action against certain named and unnamed officials at the Downstate Correctional Facility ("Downstate"), alleging that they violated his rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by confiscating literature of the Five Percent Nation, also referred to as the Nation of Gods and Earth and the Five Percenters, and refusing to recognize the Five Percent Nation as a religion. The named defendants (the "Defendants") now move to dismiss Plaintiff's complaint, asserting that they are entitled to qualified immunity. For the following reasons, it is respectfully recommended that your Honor grant the Defendants' motion.

## BACKGROUND

In July 2004, Plaintiff commenced this action, pursuant to

42 U.S.C. § 1983 and the RLUIPA, alleging that officials at Downstate violated his right to free exercise of religion as guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiff names as defendants Officer Kowalski, Captain Cavaleri, and four John/Jane Does. *See* Second Amended Compl. He identifies the John/Jane Doe defendants as: (1) the superintendent of Downstate; (2) an intake coordinator at Downstate; (3) the supervisor of the mailroom at Downstate during the relevant time period; and (4) the "Supervisor of Grievance at Downstate." *Id*. at ¶¶ 6-9. In his second amended complaint, Plaintiff claims that, when he arrived at Downstate Correctional Facility on March 9, 2004, defendant Officer Kowalski conducted a search of Plaintiff's property, during which Kowalski confiscated pieces of literature associated with the Five Percent Nation, including: (1) "120 Degrees," which included the "Supreme Mathematics and the Supreme Alphabets"; (2) a copy of "The Greatest Story Never Told"; and (3) two newspaper articles, dated May 1, 2003, discussing a decision of the Honorable Naomi Reice Buchwald concerning the Five Percent Nation. *Id*. at ¶¶ 31-50. According to Plaintiff, the materials were sent to Captain Cavaleri. *See id*. at ¶ 45. Plaintiff further alleges that, during his intake interview, after he identified his religion as "Five Percenter" and "the Nation of Gods and Earth," the intake coordinator told him that she could not record that as his

religion because it was not a recognized religion. *See id*. at ¶¶ 53-60. He claims he was forced to identify his religion as the Nation of Islam. *See id*. at ¶ 58. Additionally, Plaintiff asserts that he sent multiple letter to Captain Cavaleri and the Superintendent of Downstate asking that his religious materials be returned, but received no responses. *See id*. at ¶¶ 61-64, 76, 80. Plaintiff seeks only monetary damages.[1] *See id*.

Defendants now move to dismiss Plaintiff's complaint on the ground of qualified immunity. They argue that they are entitled to qualified immunity because there is no clearly established law recognizing the Five Percent Nation as a religion and, during the relevant time period, a protocol was being developed by the New York State Department of Correctional Services ("DOCS") to address the status of the Five Percent Nation as a religion. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Memo of Law") at 3-9.

In his opposition papers, Plaintiff argues the merits of his claim that the Defendants have violated his right to free exercise of religion under the First Amendment. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Memo of

---

[1] The remainder of Plaintiff's second amended complaint sets forth the steps that he took to administratively exhaust his claims. As Defendants have not asserted that Plaintiff has failed to exhaust his claims and the complaint should be dismissed for the reasons stated herein, the Court need not concern itself with this issue of exhaustion at this juncture.

Law in Opposition"); Reply Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Reply Memo of Law in Opposition"); Supplemental Reply Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Supplemental Reply Memo of Law in Opposition"). He explains in detail how the materials at issue are necessary to his religious practice and that, by confiscating these documents, the Defendants violated his rights under the First Amendment and the RLUIPA. *See, e.g.,* Memo of Law in Opposition at "Point 1." Plaintiff, however, fails to directly address the Defendants' contention that they are entitled to qualified immunity because there was no clearly established law that the Five Percent Nation was a religion that DOCS must recognize and it was objectively reasonable for the Defendants to take the actions they did because, at that time, DOCS was in the process of developing a protocol to address the religious rights of members of the Five Percent Nation.

## ANALYSIS

I. **Rule 12(b)(6)**

When considering a motion pursuant to Federal Rules of Civil Procedure 12(b)(6), a court is required to accept the material facts alleged in the complaint as true, and not to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994)

4

(citation and quotation omitted) (Rule 12(b)(6)); *Shipping Financial Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (Rule 12(b)(1)). "Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). For dismissals under Rule 12(b)(6), the task of a court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper*, 140 F.3d at 440. As always, "[w]here the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them "to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Employment and Guidance Svc.*, 409 F.3d 565, 569 (2d Cir. 2005).

## II. Qualified Immunity

The Defendants assert that they are entitled to qualified immunity with respect to all of Plaintiff's claims. The doctrine of qualified immunity is designed to shield state officials from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[P]rison officials performing tasks entrusted to their discretion typically 'are shielded from liability for civil damages insofar as their conduct does not violate clearly

5

established statutory or constitutional rights of which a reasonable person would have known.'" *Ford v. McGinnis*, 352 F.3d 582, 596 (2d Cir. 2003)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Second Circuit has held that the defense of qualified immunity may be properly raised in a Rule 12(b)(6) motion "as long as the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

In determining whether a defendant is entitled to qualified immunity, a court must first assess whether the facts alleged show that the officer's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). If the answer to that question is yes, the court must then go on to assess whether the right was clearly established. *See Pena v. DePrisco*, 432 F.3d 98, 107 (2d Cir. 2005). While courts have often ruled on qualified immunity without considering whether a constitutional violation has been demonstrated, in *Saucier*, the Supreme Court held that this sequential two-step analysis of qualified immunity claims is mandatory. *See Saucier*, 533 U.S. at 201 (holding that "the first inquiry *must* be whether a constitutional right would have been violated on the facts alleged" (emphasis added)); *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 56-57 (2d Cir. 2003)("In *Saucier*, the Supreme Court made plain that a sequential two-step analysis of qualified immunity claims is not simply

recommended but required."). Since *Saucier*, the Second Circuit has found that there are, however, limited "situations in which one can conclude that the Supreme Court did not intend to make the *Saucier* sequence mandatory," including where the constitutional issue could be resolved in a related criminal proceeding and where determination of the constitutional issue depends on the resolution of uncertain state law. *Ehrlich*, 348 F.3d at 57-58. In *African Trade & Information Center, Inc. v. Abromaitis*, the Second Circuit, in ruling on the issue of qualified immunity, declined to first determine whether the plaintiff's constitutional rights had been violated. *See* 294 F.3d 355, 359-60 (2d Cir. 2002). The Court reasoned that such an approach was appropriate because the case squarely raised a constitutional issue that had been expressly reserved by the Supreme Court, the merits of the issue were not adequately briefed by the parties, and the issue was not likely to evade judicial review. *See id*.

In his second amended complaint and in his opposition papers, Plaintiff alleges that the confiscation of his Five Percent Nation literature violated his right to the free exercise of his religion and his rights under the RLUIPA. Defendants argue that this Court should skip the threshold question of whether the facts alleged show that Plaintiff's constitutional rights were violated because "at the time relevant to this matter

it was not clearly established that members of the Five Percent Nation were entitled to religious protections, and further because the DOCS regulations currently, but not then, in place remediate this issue going forward." *See* Memo of Law at 6. As in *African Trade*, here, the merits of the alleged constitutional violation have not been sufficiently addressed by the parties on this motion to enable the Court to render a fully informed decision on the issue. *See African Trade*, 294 F.3d at 360 ("This cursory briefing would make it 'all the more perilous' for us to render an advisory opinion on the issue."). Thus, for the purposes of the instant motion, by not addressing the first prong of the qualified immunity analysis, Defendants have, in effect, conceded that Plaintiff's rights under the First Amendment and RLUIPA have been violated. Furthermore, the issue of whether inmates have a constitutionally protected right to have Five Percent Nation literature has not evaded judicial review. Indeed, just prior to the incident of which Plaintiff complains, the precise issue was addressed by Judge Buchwald of this Court in *Marria v. Broaddus*, No. 97 Civ. 8297, 2003 WL 21782633 (S.D.N.Y. July 31, 2003). In that case, the plaintiff challenged, under the First and Fourteenth Amendments and the RLUIPA, the DOCS' policy disallowing his receipt of Five Percent Nation literature and denying him the right to assemble with other members of the Five Percent Nation on the basis that the

group was an "unauthorized" or "security threat" group. *Id*. at *1. On the defendants' summary judgment motion, the Court held that the defendants were entitled to qualified immunity on the plaintiff's procedural due process claim for monetary damages because the status of the Five Percent Nation as a religious group had not been settled.[2] *See Marria v. Broaddus*, 200 F.Supp.2d 280, 301 (S.D.N.Y. 2002). After a bench trial, the Court ruled in favor of the Plaintiff on his First Amendment and RLUIPA claims and granted him injunctive relief. *See Marria*, 2003 WL 21782633, at *7-21. The Court found that the plaintiff was entitled to receive and possess the 120 Degrees, along with the Supreme Alphabet and the Supreme Mathematics. *See id*. at *19. The Court stated, "We have found that plaintiff is a sincere adherent to a religious belief system that qualifies for First Amendment protection, but are also prepared to accept for the purposes of this decision DOCS' claims that prison inmates identified as 'Five Percenters' have been associated with instances of violence and disruption." *Id*. at *18. The Court, therefore, ordered that DOCS reevaluate its policies concerning the Five Percent Nation in light of the Court's ruling and determine the appropriate accommodations that could be made consistent with security needs. *See id*. at *19. Given these

---

[2] The plaintiff had conceded that the defendants were entitled to qualified immunity on his First Amendment and RLUIPA claims for money damages. *See Marria*, 200 F.Supp.2d at 300.

circumstances, the Court should proceed with the second prong of the qualified immunity analysis.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. In making this determination, a court should consider "(1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court supported the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002).

In this case, at the time of the alleged incident, the rights of members of the Five Percent Nation in prison were not clearly established. Indeed, at the time of the conduct, neither the Supreme Court nor the Second Circuit had recognized the religious rights of Five Percenters or held that the Five Percent Nation is, in fact, a religion. While Judge Buchwald had issued a decision in *Marria v. Broaddus* finding that members of the Five Percent Nation are entitled to First Amendment protections, a district court decision does not render the law on the issue clearly established for the purposes of the qualified immunity analysis. *See Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir.

10

2001)("A district court opinion affirmed by an unpublished table decision does not determine whether a right was clearly established."). Moreover, pursuant to Judge Buchwald's decision of July 31, 2003, when Plaintiff's Five Percent Nation literature was confiscated by the Defendants, DOCS was in the process of developing a protocol for accommodating members of the Five Percent Nation. The protocol promulgated by DOCS was not adopted by this Court and put in place until July 29, 2004, after the alleged incident, when Judge Buchwald, in *Marria v. Broaddus*, granted the defendants' motion for an order adopting the protocols. *See Marria v. Broaddus*, No. 97 Civ. 8297, 2004 WL 1724984 (S.D.N.Y. July 29, 2004). When Plaintiff entered Downstate in March 2004 and his Five Percent Nation materials were confiscated, Defendants were apparently following the DOCS' policy that was then in place. Under these circumstances, it cannot be said that the confiscation of the Plaintiff's Five Percent Nation literature was objectively unreasonable in light of clearly established law. *See Marria v. Broaddus*, 200 F.Supp.2d at 301; *Graham v. Cochran*, No. 96 Civ. 6166, 2000 U.S. Dist. LEXIS 1477, at *37-*39 (S.D.N.Y. Feb. 14, 2000). *See also Green v. Bauvi*, 46 F.3d 189, 195 (2d Cir. 1995)(explaining that "adherence to s[tate] regulations may be pertinent in considering whether a reasonable official would have known his actions violated the Constitution"). Defendants, including the John Doe

11

defendants, are, therefore, entitled to qualified immunity on Plaintiff's First Amendment and RLUIPA claims and Plaintiff's complaint should be dismissed. *See Orfan v. Goord*, 411 F.Supp.2d 153, 158 (N.D.N.Y. 2006)(applying qualified immunity to plaintiff's claim for money damages under RLUIPA).

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that your Honor grant the Defendants' motion to dismiss and dismiss Plaintiff's complaint as against all Defendants.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, Room 633, White Plains New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order

to judgment that will be entered by Judge Robinson. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), cert. denied 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Date: May 25, 2006
White Plains, New York

Respectfully submitted,

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing report and recommendation have been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

Jeffrey Evans
04-A-1335
Franklin Correctional Facility
62 Bare Hill Road
Malone, New York 12953

John E. Knudsen, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271-0332